UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:04 CR 676 DJS |
| ) | DDN |
| KURTIS RAY EASTER, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the Court upon (1) the waiver of the Speedy Trial Act rights of defendant Kurtis Ray Easter and (2) the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing on the pretrial motions was held on May 27, 2005,[1] and on June 10, 2005, defendant waived his Speedy Trial Act rights.

**1. Speedy Trial Act waiver**

On June 10, 2005, defendant Kurtis Ray Easter appeared before the undersigned with counsel for a status hearing. Defendant had sought to file motions with the Court of Appeals. These motions were returned to defendant and were provided to his counsel and to opposing counsel. Defendant's counsel stated that he intended to seek a continuance of the July 5, 2005, trial setting because of difficulties he lately encountered with defendant, the complexity of the case, and the fact that defense counsel may consider filing a motion for a mental examination of the defendant. Such a motion has not been filed heretofore. At the status hearing on June 10, defendant orally waived his rights under the Speedy Trial Act.

The primary reason for the waiver of Speedy Trial Act rights is the need for counsel to fully investigate the defendant's current

---

[1] After the evidentiary hearing the parties filed post-hearing memoranda.

circumstances.  After hearing the statements of counsel about the case, and after personally addressing defendant Easter, the undersigned finds that Easter voluntarily and knowingly waived his Speedy Trial Act rights, and, because defense counsel will need a sufficient amount of time to fully investigate defendant's current circumstances, the ends of justice served by allowing the defendant to waive his rights under the Speedy Trial Act outweigh the best interest of the public and the defendant in a speedy trial.  See 18 U.S.C. § 3161(h)(A).

## 2.  Motion to suppress evidence

Defendant Kurtis Ray Easter has moved to suppress evidence and statements (Doc. 16).  From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

## FACTS

1.   Before September 1, 2004, Department of Homeland Security Special Agent Teresa Ambrose, a member of Joint Terrorism Task Force, investigated several threatening letters written by Kurtis Easter to Chief Judge James Loken of the United States Court of Appeals for the Eighth Circuit.[2]

2.   On September 1, 2004, during the pendency of Easter's second appeal, Agent Ambrose and Federal Bureau of Investigation Special Agent Jeff Brown interviewed Easter at the Arkansas State Prison in Tucker, Arkansas.  The agents, who were unarmed, met with Easter in a small

---

[2]The grand jury indicted Easter in the instant action for sending threatening letters to Eighth Circuit Clerk of Court Michael Gans on June 20, 2003 (Count One); to Chief Judge Loken on August 6 and 18, 2004 (Counts Two and Three); and to the Eighth Circuit Court of Appeals on August 22, 2004 (Count Four).  Before the Court of Appeals was the conviction of Easter in which he had pled guilty to mailing threatening letters.  He had been sentenced to ten years imprisonment, to be served consecutively to his sentence in the Arkansas Department of Corrections. (Def. Ex. A.)  It is not disputed that during 2003, Easter appealed this conviction pro se to the Court of Appeals; this appeal was dismissed on March 28, 2003.  In August 2004, Easter had another appeal pending before the Eighth Circuit; in this appeal from at least August 2004 he was represented by appointed counsel through the ultimate denial of the appeal on May 10, 2005.  Chief Judge Loken recused himself from considering Easter's appeal.

interview room; a glass partition, through which the agents and Easter could converse, separated the agents from Easter. The agents were aware only that Easter had written threatening letters to a judge of the Eighth Circuit Court of Appeals. They were unaware of the nature of Easter's appellate court appeals. The agents also were unaware whether Easter had an attorney for his federal court appeals. They did not ask him if he had an attorney and Easter did not indicate that he had an attorney.

3. At the beginning of the interview, the agents introduced themselves to Easter. Then, Agent Brown advised Easter of his constitutional rights to remain silent and to counsel, by reading them to him from an Advice of Rights form, Government Exhibit 1. He asked Easter whether he understood his rights and had any questions. Easter understood his rights. A prison correctional officer brought the form to Easter's side of the glass partition. Easter briefly read the document and indicated he understood he was waiving his rights and at 4:00 p.m. he signed his name to the form, thereby expressly stating that he was willing to answer questions without a lawyer present. The correctional officer brought the form back to the agents. They then signed the form as witnesses to Easter's signature. The only people present with Easter were the agents and the correctional officer.

4. The agents then asked Easter questions about the threatening letters sent to the Court of Appeals. He gave oral statements in response. Easter did not appear to be intoxicated. There was no physical contact between the agents and him. They did not display any weapon and they made no promise to induce his cooperation.

5. The interview lasted approximately one hour, ending when Easter for the first time told the agents that he had said enough and that he wanted a lawyer. At that time the agents asked him no more questions, stopped the interview, and left the room.

## DISCUSSION

The statements made by defendant Easter during the interview with the agents in the prison on September 1, 2004, should not be suppressed. The record is clear that Easter was advised of and understood his rights

under Miranda v. Arizona, 384 U.S. 436 (1966); no evidence indicated that he lacked command of his faculties or that he did not know what was going on; and the agents did not intimidate, deceive, or coerce him into making his statements. See Moran v. Burbine, 475 U.S. 412, 421-23 (1986); Berkemer v. McCarty, 468 U.S. 420, 433 n.20 (1984).

Defendant invokes the Sixth Amendment right to counsel and argues that there was a sufficient relationship between the facts involving Easter's second appeal, in which he was represented by counsel, and the facts involving the agents' investigation to prohibit the agents from interviewing him without counsel present. See Michigan v. Jackson, 475 U.S. 625 (1986) (once the Sixth Amendment right to counsel has attached and is invoked, any waiver of counsel thereafter during a law enforcement-initiated, custodial interview is not effective). The undersigned disagrees.

In McNeil v. Wisconsin, 501 U.S. 171 (1991), the Supreme Court held that the Sixth Amendment right to counsel and the rule of Michigan v. Jackson are offense specific. The Court stated:

> The police have an interest . . . in investigating new or additional crimes [after an individual is formally charged with one crime.]. . . [T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities. . . . Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses.

501 U.S. at 175-76 (internal quotations and citations omitted).

In the case at bar, the offenses which were the subject of Easter's federal appeal were related to the offenses the agents were investigating on September 1, 2004, only by general similarity. The offenses for which he was convicted in the federal district court in Arkansas were completed well before the offenses for which he is indicted in this action and which the agents were investigating when they interviewed him on September 1, 2004. His having appellate counsel for the earlier offenses was no bar to the interview regarding the later offenses.

For these reasons,

**IT IS HEREBY RECOMMENDED** that the motion of defendant to suppress evidence and statements (Doc. 16) be denied.

The parties are advised they have ten (10) days to file written objections to this Report and Recommendation. The failure to file objections may result in a waiver of the right to appeal issues of fact.

      /s/ David D. Noce
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on June 13, 2005.